UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CASSANDRA WILLIAMS PLAINTIFF

V. CIVIL ACTION NO. 3:19-CV-927-DPJ-FKB

CANTON PUBLIC SCHOOL DISTRICT, ET AL. DEFENDANTS

ORDER

Plaintiff Cassandra Williams says she was wrongfully terminated from her position as superintendent for Defendant Canton Public School District ("CPSD"). The case is before the Court on her motion seeking leave to file an amended complaint and on motions to dismiss filed by five named defendants. For the following reasons, the motion to amend and the motions to dismiss are all granted in part and denied in part.

I. Facts and Procedural History

In March 2016, CPSD, acting through its Board of Trustees, hired Williams as superintendent of public schools.[1] Williams and CPSD memorialized the arrangement in a contract of employment under which Williams would serve as superintendent from July 1, 2016, through June 30, 2019. But CPSD terminated her employment on May 21, 2018, without a pre-termination hearing. Williams claims that CPSD instead held a post-termination hearing, following which it affirmed its decision to terminate her employment.

Williams filed this lawsuit in Madison County Circuit Court on December 2, 2019. She asserts claims against CPSD; current or former members of the CPSD Board of Trustees

[1] "The governing authority of the Canton Public School District is composed of five trustees, three of whom are appointed by the Canton Board of Aldermen and two of whom are elected from the added territory which lies outside the municipal boundaries but within the school district." Compl. [1-1] ¶ 28.

Courtney Rainey, Moses Thompson, Shivochie Dinkins, and Tim Taylor; current or former members of the Canton Board of Aldermen Erik Gilkey, Andrew Grant, Daphne Sims, Fred Esco, Jr., and Les Penn; and CPSD Board Attorney Lisa Ross. The Complaint contains claims for breach of contract; violations of state and federal RICO statutes; tortious interference with contract; and breach of the covenant of good faith and fair dealing.

Defendants removed the case to this Court on December 19, 2019, and the following Defendants moved to dismiss: CPSD [20], Thompson [28], Ross [39], Dinkins [44], and Taylor [54], with Rainey joining in all those Defendants' motions [82, 83, 85, 86, 87]. Esco, Gilkey, Grant, Penn, and Sims collectively joined in the dispositive motions as well [69]. After the briefing on those motions concluded, Williams moved to amend the Complaint. Mot. [81]. The Proposed Amended Complaint adds a due-process claim and removes the state RICO and good-faith-and-fair-dealing claims. Dinkins opposed the motion to amend, and Williams filed a timely reply.

II. Standard

Defendants' motions to dismiss arise under Federal Rules of Civil Procedure 12(b)(6) and 12(c).[2] When considering motions under those rules, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

---

[2] CPSD, Ross, and Taylor moved for dismissal after answering, so their motions fall under Rule 12(c). The standards for motions under Rule 12(b)(6) and Rule 12(c) are identical. *See Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To overcome a Rule 12(b)(6) or Rule 12(c) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted).

Rule 15(a) governs motions to amend and states that "[t]he court should freely give leave [to amend] when justice so requires." That said, a district court may deny a motion to amend where amendment would be futile. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000). Amendment would be futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Id.* at 873. So the Court applies "the same standard of legal sufficiency as applies under Rule 12(b)(6)" to the motion to amend. *Id.* (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).

## III. Analysis

Because the moving defendants each raise slightly different arguments with respect to Williams's claims against them, the Court will address the sufficiency of the Complaint and/or Proposed Amended Complaint on a claim-by-claim, rather than defendant-by-defendant, basis.

### A. Due-Process Claim

#### 1. CPSD

Only CPSD gleaned from the original Complaint that Williams was asserting a due-process claim. CPSD initially argued that Williams was not entitled to a pre-termination hearing, but it withdrew the argument in reply based on *Greene v. Greenwood Public School District*, 890

F.3d 240, 244 (5th Cir. 2018) (holding that fired school district superintendent was entitled to pre-termination hearing). CPSD Reply [35] at 2.

Procedurally, the original Complaint did not expressly include a Fourteenth Amendment due-process claim, so CPSD's motion to dismiss is moot as to such a claim. That said, Williams's motion to amend and add a due-process claim against CPSD is granted.

2. Individual Defendants

Only Defendant Dinkins opposes Williams's motion to amend her Complaint to more clearly state a due-process claim. According to Dinkins, the claim would be futile as to the individual defendants "because members of municipal boards 'cannot be held individually liable under § 1983.'" Dinkins Resp. [88] ¶ 6 (quoting *Owens v. City of Flowood*, No. 3:16-CV-451-CWR-LRA, 2017 WL 368725, at *2 (S.D. Miss. Jan. 23, 2017)).

In *Owens v. City of Flowood*, the court noted that "liability under § 1983 only attaches to final decision-makers." 2017 WL 368725, at *2 (citing *Johnson v. Louisiana*, 369 F.3d 826, 831 (5th Cir. 2004)). But after *Owens* was decided, the Fifth Circuit expressly overruled *Johnson* and disavowed the rigid rule against individual liability. *See Sims v. City of Madisonville*, 894 F.3d 632, 640 (5th Cir. 2018). The Sims court explained that *Johnson* does not control because it "ignored" the earlier holding in *Jett v. Dallas Independent School District* that allowed individual liability under § 1983 for non-decisionmakers. *Sims*, 894 F.3d at 640 (citing 798 F.2d 748, 758 (5th Cir. 1986), *aff'd in part, remanded in part on other grounds*, 491 U.S. 701 (1989)).

Accordingly, "individual liability for a government official who violates constitutional rights . . . turns on traditional tort principles of 'but-for' causation." *Id.* at 639. "If an individual defendant's [action] is a link in the causal chain that leads to a [violation of the] plaintiff's [rights], the individual may be liable even if she is not the final decisionmaker." *Id.*; *see also*

*Campos v. Donna Indep. Sch. Dist.*, No. 7:15-CV-70, 2016 WL 8117635, at *6 (S.D. Tex. Apr. 4, 2016) (denying summary judgment and holding that individual board members could be individually liable under § 1983 based on board actions and decisions).[3]

Dinkins's alternative futility argument regarding the sufficiency of the process Williams received invites the Court to weigh the facts. *See* Dinkins Resp. [88] at 6 (asserting that Plaintiff's "allegation mischaracterizes the facts"); *see also id.* (arguing that Williams deserved to be fired). At this stage, the Court accepts the well-pleaded facts and views them in the light most favorable to Williams. Dinkins has not shown futility. The motion to amend is granted as to the due-process claim against the individual defendants.

B. RICO Claims

In response to Defendants' motions, Williams conceded her claims under Mississippi's RICO statute, and she did not include them in her Proposed Amended Complaint. *See* Miss. Code Ann. §§ 97-43-1 to 97-43-11. The motion to amend and motions to dismiss are therefore granted to the extent they eliminate the state RICO claims.

As to the federal RICO claim, Williams clarified in response to CPSD's motion to dismiss that the claim is asserted only against the individual defendants. Pl.'s Resp. [31] at 2. To the extent the Complaint or Proposed Amended Complaint includes a federal RICO claim against CPSD, that claim is also dismissed.

Turning to the federal RICO claim against the individual defendants, the Complaint and the Proposed Amended Complaint are substantially identical, so the Court's discussion of the

---

[3] Although it appears to the Court that *Sims* applies, neither party has addressed it or any other Fifth Circuit case dealing with individual liability for non-decisionmakers. Indeed, Williams simply ignored Dinkins's substantive legal arguments and focused her reply on superficial arguments regarding the Rule 15 standards. Accordingly, if Dinkins can distinguish *Sims*, she may raise that issue in a subsequent motion for summary judgment.

sufficiency of the original allegations dovetails with the futility analysis. *Compare* Compl. [1-1] ¶¶ 35–34, *with* Proposed Am. Compl. [81-1] ¶¶ 40–50.

"Congress enacted RICO . . . for the purpose of 'seek[ing] the eradication of organized crime in the United States.'" *Beck v. Prupis*, 529 U.S. 494, 496 (2000) (quoting Organized Crime Control Act of 1970, Pub. L. No. 91-452, 84 Stat. 922, 923). RICO provides "a civil cause of action for any person 'injured in his business or property by reason of a violation of [18 U.S.C. §] 1962.'" *Id.* (quoting 18 U.S.C. § 1964(c)).

Williams invokes subsections (c) and (d) of § 1962. "[S]ubsection (c) makes it 'unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *Id.* at 497 (quoting 18 U.S.C. § 1962(c)). And "subsection (d) makes it unlawful 'for any person to conspire to violate any of the provisions of subsection (a), (b), or (c).'" *Id.* (quoting 18 U.S.C. § 1962(d)).

Subsections (c) and (d) share "[c]ommon elements." *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995). "These common elements teach that any RICO claim necessitates '1) a *person* who engages in 2) a *pattern of racketeering activity*, 3) connected to the acquisition, establishment, conduct, or control of an *enterprise*.'" *Id.* (quoting *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988)). To establish standing, the plaintiff must show "[s]he has been injured in [her] business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

Williams says she has adequately pleaded all three elements in her Complaint and Proposed Amended Complaint or that she could after discovery. According to her, Defendants

"established an enterprise for the purpose of gaining control of the Board of Trustees of CPSD." Compl. [1-1] ¶ 26; *see* Proposed Am. Compl. [81-1] ¶ 41. "In order to acquire control of the school district the members of the enterprise determined that it was necessary to terminate the services of the superintendent, . . . Williams." Compl. [1-1] ¶ 28; *see* Proposed Am. Compl. [81-1] ¶ 43. Thus, Defendants "are an informal association of individuals who formed the [e]nterprise in order to cheat and defraud Williams." Pl.'s Mem. [63] at 5. And after terminating her employment,

> the enterprise wasted no time in creating jobs and giving jobs to their political supporters who were not qualified for their positions. In addition, service contracts, namely, contracts for the janitorial services for the school buildings, landscape work and legal services were awarded to individuals and companies in which various members of the enterprise held an interest.

Compl. ¶ 30; *see* Proposed Am. Compl. [81-1] ¶ 45.

To accomplish the alleged enterprise's goals, Williams relies on a pattern of racketeering activity through mail and wire fraud. As she puts it, Defendants "communicated with each other with the specific intent of executing and furthering their fraudulent scheme." Compl. [1-1] ¶ 31C; *see* Proposed Am. Compl. [81-1] ¶ 46C. She does not, however, detail any specific communication through the mail or over the wires.

There are many deficiencies in Williams's RICO claim, but one permeates each essential element—Williams's failure to show continuity. First, the plaintiff must identify a person who "poses or has posed a continuous threat of engaging in acts of racketeering." *Delta Truck & Tractor*, 855 F.2d at 242. Second, to establish a pattern of racketeering activity, "a plaintiff must show both a relationship between the predicate offenses—here mail fraud and wire fraud—and the threat of continuing activity." *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). Likewise, "[t]he concept of

continuity has been incorporated into the enterprise requirement in order to control the scope of RICO." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 230 (5th Cir. 2003).

"A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *H.J. Inc.*, 492 U.S. at 242. Thus, "[a]n enterprise that 'briefly flourished and faded' will not suffice." *Whelan*, 319 F.3d at 230 (quoting *Landry v. Air Line Pilots Ass'n Int'l, AFL-CIO*, 901 F.2d 404, 433 (5th Cir. 1990)). Alternatively, a plaintiff can establish continuity through "an open-ended period of conduct that 'by its nature projects into the future with a threat of repetition.'" *Malvino*, 840 F.3d at 231 (quoting *H.J. Inc.*, 492 U.S. at 241).

All but one Defendant who moved to dismiss argued—with binding authority—that the short course of events leading to the termination of Williams's employment is insufficient to establish continuity. *See* Ross Mem. [40] at 4; Dinkins Mem. [45] at 10; Taylor Mem. [55] at 8. Six other Defendants joined in those motions. *See* Joinders [69, 85, 86, 87]. Yet Williams ignored their arguments, and her pleadings may show why.

According to her, the predicate acts occurred "between November 6, 2017 and May 30, 2018." Pl.'s Mem. [61] at 2. November 6, 2017, was the day Defendant Rainey was elected as a trustee to the school board, and May is the month Williams lost her job. State Ct. R. [2] at 38–39 (RICO Statement at 2–3). Admittedly, Williams wants discovery so she can adequately plead mail and/or wire fraud. Pl.'s Mem. [61] at 2. Indeed, it is not apparent from her threadbare pleadings that she is aware of any mail or wire fraud. But exact dates, identities, and content aside, her own pleadings and arguments bracket the predicate acts as occurring between November 2017 and May 2018. *Id*. That is not enough. *See Malvino*, 840 F.3d at 232 (holding

that five-month enterprise was too short) (citing *Wisdom v. First Midwest Bank*, 167 F.3d 402, 407 (8th Cir. 1999) (holding that ten-month period was too short to establish closed-ended continuity); *Tabas v. Tabas*, 47 F.3d 1280, 1293 (3d Cir. 1995) (finding that "conduct lasting no more than twelve months did not meet the standard for closed-ended continuity")).

As noted, Williams had at least three opportunities to address this essential element yet offered no response. And armed with Defendants' arguments, she drafted a Proposed Amended Complaint that is no better. She has pleaded her best case, and absent continuity, her RICO claim fails as a matter of law. The federal RICO claim is therefore dismissed with prejudice. *See H.J. Inc.*, 492 U.S. at 242.[4]

C. Claims for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

Williams omitted the claim for breach of the covenant of good faith and fair dealing from her Proposed Amended Complaint, indicating that she agrees to dismissal of that claim. The motions to dismiss and motion to amend are therefore all granted as to that claim.

In response to Ross's motion to dismiss the breach-of-contract claim, Williams clarified that it "is limited to [CPSD.]" Pl.'s Mem. [63] at 7. To the extent the Complaint or Proposed Amended Complaint contains breach-of-contract claims against the individual defendants, those claims are dismissed.

[4] The lack of continuity is not her only problem. Williams failed to substantively respond to other arguments in Defendants' briefs, and Defendants are arguably correct that she failed to plead fraud with particularity. Moreover, the viability of a RICO claim in the employment context is itself iffy. *See Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998) (affirming dismissal and noting that "[w]hile it may be theoretically possible to allege a wrongful discharge which results directly from the commission of a RICO predicate act . . . any such safe harbor would be severely circumscribed" (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 47 (1st Cir. 1991)).

As for CPSD, it argues that no breach occurred because Williams was terminated for "good cause." CPSD Mem. [21] at 12. But that argument goes beyond the pleadings, relying on evidence CPSD has not submitted and could not submit under Rule 12(b)(6). The Court finds that Williams has minimally met the pleading standards as to breach of contract. *See* Proposed Am. Compl. [81-1] ¶ 36 (averring that Williams "fully complied with all of the provisions of the contract"). CPSD's motion to dismiss is denied; Williams's motion to amend is granted.

D. Tortious-Interference-With-Contract Claim

Williams "does not allege that CPSD interfered with the contract and agrees with CPSD that a cause for interfering with a contract does not lie against one who is a party to the contract." Pl.'s Mem. [31] at 7. So to the extent the Complaint or Proposed Amended Complaint contains a tortious-interference claim against CPSD, that claim is dismissed.

The individual defendants raise several arguments regarding the tortious-interference claim. To start, Thompson, Dinkins, and Taylor all assert that as CPSD board members, they too are parties to the employment contract. *See Rex Distributing Co., Inc. v. Anheuser-busch, LLC*, 271 So. 3d 445, 450 (Miss. 2019) ("A party to a contract cannot be liable for tortious interference with the same contract." (quoting *Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A.*, 910 So. 2d 1093, 1098 n.3 (Miss. 2005))).

They cite *Floyd v. Amite County School District* to support their argument. No. 3:04-CV-78-TSL-JCS, 2008 WL 2954972 (S.D. Miss. July 29, 2008). In that case, the court did not distinguish between claims against board members in their official and individual capacities but seemed to accept a similar argument when dismissing a former principal's tortious-interference claim against the school district, its board of education, and individual board members because "defendants were parties to [the plaintiff's] employment contract." 2008 WL 2954972, at *16.

Here, the employment contract was between Williams and CPSD's board; the members of the board in their individual capacities were not parties thereto. *See* State Ct. R. [2] at 22–26 (Employment Contract); *id.* at 22 ("This agreement is made and entered into by the Board of Trustees of the Canton Public School District, hereinafter sometimes referred to as the Board, and Cassandra Williams, hereinafter sometimes referred to as the Superintendent."). The contract does not identify the individual board members as parties, it does not list them, and none of the individual defendants signed the contract. *Id.* at 26.

In a similar context, the court in *Norris v. Housing Authority of City of Galveston*, rejected a breach-of-contract claim against individual board members. 980 F. Supp. 885, 892–93 (S.D. Tex. 1997). The Court held:

> To even argue that the three individual Board members, who voted to terminate Plaintiff, entered the employment contract in their *individual* or *personal* capacities is absolutely ludicrous when such argument is viewed in light of the plain and unambiguous language in the employment contract. . . . Nowhere in the contract are the individual board members' names mentioned, and nowhere within the contract is it so much as intimated that the contract will even remotely benefit the members of the Board in their individual capacities.

*Id.* So too here, Williams could not assert a breach-of-contract claim against the individual defendants in their individual capacities because they are not parties to the contract. Conversely, she may assert a tortious-interference claim against non-parties to the contract.

Dinkins and Taylor make the additional argument that Williams failed to sufficiently plead her tortious-interference claim. To establish a tortious-interference claim, Williams must show:

> (1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiff[] in [her] lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted.

*O.W.O. Invs., Inc. v. Stone Inv. Co., Inc.*, 32 So. 3d 439, 448–49 (Miss. 2010) (quoting *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998)). "The plaintiff must prove that an enforceable obligation existed between itself and another party, and that, but for the defendant's interference, the contract would have been performed." *Id.*

Dinkins and Taylor complain that Williams "simply recites the elements of the cause of action without providing any facts supportive of her theory." Taylor Mem. [55] at 12; *accord* Dinkins Mem. [45] at 11 ("Plaintiff did no more than recite the elements of the cause of action . . . ."). To some extent, their characterization is accurate; Count IV merely recites the elements. *See* Compl. [1-1] ¶ 36; Proposed Am. Compl. [81-1] ¶ 52. But Williams "incorporates the allegations contained in" the preceding paragraphs. Compl. [1-1] ¶ 35; Proposed Am. Compl. [81-1] ¶ 51. And though it presents a fairly close call, the Complaint and Proposed Amended Complaint are not devoid of facts regarding Dinkins's and Taylor's alleged efforts to orchestrate the termination decision. *See* Compl. [1-1] ¶¶ 19, 29; Proposed Am. Compl. [81-1] ¶¶ 33, 44. The Rule 12(b)(6) standard "'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556). And as to those defendants, Williams has said enough for now.

Defendant Ross initially offered three distinct arguments for dismissing the tortious-interference claim against her, two of which she conceded in reply—at least at the Rule 12(b)(6) stage. *See* Ross Rebuttal [67] at 6. But she persists in arguing the "general rule" that "an agent for a disclosed principal incurs no liability for a breach of duty or a contract perpetrated by its disclosed principal." *Slocum v. Allstate Ins. Co.*, No. 2:19-CV-153-KS-MTP, 2020 WL 428021, at *5 (S.D. Miss. Jan. 27, 2020) (quoting *Gray v. U.S. Fid. & Guar.*, 646 F. Supp. 27, 29 (S.D.

Miss. 1986)). *Slocum* also notes, however, that "[e]xceptions to this general rule have been made where plaintiff has made allegations which establish a separate and independent tort against the agent." *Id.* And *Slocum* did not address tortious-interference claims against the agent where the disclosed principal allegedly breached the subject contract. *Id.* at *2.

Here, the tortious-interference claim against Ross does not seek to hold her liable for a breach CPSD "perpetrated." *Id.* The duty CPSD allegedly breached flowed from contract, whereas the claim against Ross is for alleged tortious-interference with a contract. In other words, the claims against Ross are for a "separate and independent tort." *Id.* The motion to dismiss is denied without prejudice.[5]

IV. Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, CPSD's Motion to Dismiss [20], Thompson's Motion to Dismiss [28], Ross's Motion to Dismiss [39], Dinkins's Motion to Dismiss [44], Taylor's Motion to Dismiss [54], and Plaintiff's Motion to Amend [81] are all granted in part and denied in part. The state and federal RICO claims and claim for breach of the covenant of good faith and fair dealing against all defendants; the breach-of-contract claim against Thompson, Ross, Dinkins, Taylor, Gilkey, Grant, Sims, Esco, Penn, and Rainey; and the tortious-interference

---

[5] As with many other legal issues in these briefs, Williams simply ignored Ross's argument. Moreover, most of the arguments she asserted in her memoranda were at best cursory and often without supporting legal authority. While it is not the Court's duty to conduct a party's research, it may not grant a dispositive motion by default. *See* L.U. Civ. R. 7(b)(3)(E) ("If a party fails to respond to any motion, other than a dispositive motion, the court may grant the motion as unopposed."). As frustrating as it may be, the Court has been forced to consider the issues without input from Williams. In this particular instance, the authority Ross cited is distinguishable. But it gives the Court pause that Williams could not muster a response. So, if Ross can find supporting authority, she is free to re-urge this point. Going forward, Williams is instructed to either address or concede each argument Defendants make in their memoranda.

claim against CPSD are dismissed. Finally, the parties are directed to contact the chambers of United States Magistrate Judge F. Keith Ball within 10 days of the entry of this Order to re-set the case-management conference.

**SO ORDERED AND ADJUDGED** this the 13th day of May, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE